THE NATIONAL DOCKS AND NEW JERSEY JUNCTION CONNECTING RAILWAY COMPANY

*v.*

THE UNITED NEW JERSEY RAILROAD AND CANAL COMPANY and THE PENNSYLVANIA RAILROAD COMPANY.

1. When a railroad corporation attempts to acquire land by the exercise of the power of eminent domain, compensation, either actual or constructive, must precede appropriation.

2. A railroad corporation, incorporated under the General Railroad law, can, in no case where payment into court must precede appropriation, acquire a right to take possession of the land condemned until it has paid the con-

National Docks Ry. Co. v. United New Jersey R. R. Co.

·demnation money into court in such manner that the court acquires, the instant that the payment is made, complete control over the money for all purposes.

3. Payment to the clerk of the court in such a case, in the absence of an order or rule, is not a payment into court. The clerk has no authority to receive money for the court without a rule.

4. When a statute directs that money shall be paid into a particular court, without designating a person to receive and where the money shall be placed for safe keeping, the duty of making such designation is necessarily imposed on the court, and the court must then look into the matter and decide who shall be authorized to receive the money and where it shall be placed for ·safe keeping.

5. Land taken by the exercise of the power of eminent domain, under the General Railroad law, must be held to be unalterably limited to the land particularly described, and its area can in no case and under no circumstances be ·extended or enlarged by construction.

6. A grant acquired by a railroad corporation by the exercise of the power of eminent domain, should not be enlarged or extended by inference or implication. With respect to such grants, the rule of construction should be, that whatever is not granted by express words must be understood to have been withheld.

On application for an injunction. Heard on bill and affidavits and answer and affidavits and cross-bill and replication.

*Mr. Charles L. Corbin* and *Mr. John R. Emery*, for the complainant.

*Mr. James B. Vredenburgh* and *Mr. Joseph D. Bedle*, for the defendants.

VAN FLEET, V. C.

This is an application for a mandatory injunction. The litigants are railroad corporations. The complainant was incorporated under the General Railroad law. By its bill it alleges that it has acquired, by condemnation, a right to construct an underground crossing, through the lands of the defendants, at a point in Jersey City where, in addition to the tracks constituting a part of the defendants' main line, more than twenty other tracks have been laid for the storage of passenger cars when not in use; that it desires to commence work at once in constructing such

crossing, by making a deep excavation under the three storage tracks lying farthest to the south, and called tracks Nos. 1, 2 and 3, and that the defendants, to prevent it from constructing such crossing, have placed cars on these three tracks at the point where the excavation must commence, and have also, after written request, refused to remove them. The bill also alleges, that it is the intention of the defendants to keep cars constantly on the tracks at the point of crossing, and by that means prevent any excavation being made there, unless the complainant will take the risk of the cars falling into the excavation and killing or maiming its workmen. To remedy the wrongs the defendants are thus committing, the court is asked to compel them to remove the cars, standing over the crossing, in such manner, from time to time, as will enable the complainant to construct its crossing expeditiously and with safety, and also to enjoin them from doing anything which will prevent or obstruct the complainant from the full and fair exercise of its rights. The defendants deny that the complainant's proofs show that it has acquired a right to enter upon and take possession of their land at the point where it claims a right to construct a crossing.

No principle of legal right and duty is better settled in this state than that which declares, that when a railroad corporation attempts to acquire land by the exercise of the power of eminent domain, compensation, either actual or constructive, must precede appropriation. The constitution so ordains. As the complainant was organized under the General Railroad law, it has only such rights and powers as that law grants. That law expressly declares, that no company incorporated under it shall take possession of any land taken by it, by condemnation, until it shall have first made compensation, but, that after what must be considered as just compensation in the particular case has been finally determined, in either of the modes pointed out, the condemning company shall, on making tender of the amount ascertained by such determination, and in case the same is refused, on paying it into the circuit court of the county wherein the land taken lies, "be empowered to enter upon and take possession of the said land and proceed with the work of constructing its road." *Rev.*

*p. 929 § 101.*    There can be no doubt, that the legislative design, in incorporating this provision in the General Railroad law, was to render tender and refusal and payment into court, a constructive payment, and to give such a payment the same legal effect as would result from an actual payment.    The sum which must be regarded as just compensation, for the land taken in this case, has already been finally determined, so far, at least, as to invest the complainant with a right, on tender and refusal of the money and its payment into court, to take such possession of the land as may be necessary to enable it to proceed with the construction of its road thereon.    And the sum so ascertained has been tendered and refused.    So far I regard the complainant's case free from doubt or dispute.    But the question in contest is, has the other prerequisite of the statute been performed?    Or, stated in another form, had the condemnation money been paid into the circuit court when the complainant filed its bill?    On this point, the bill, after alleging that both parties appealed from the award of the commissioners, and that a trial by jury had been had and a verdict rendered, on which judgment had been entered against the complainant for $95,000, says:

"Your orator, on the first day of November, 1893, duly tendered payment of said sum, with interest from said twenty-third day of October, 1893, to the said owners, and payment having been refused, forthwith duly paid said sum and interest to the clerk of the Hudson circuit court."

The manner in which this payment was made is stated with greater particularity in an affidavit made by one of the complainant's engineers.    After stating that he was present when the tender was made and refused, he says:

"I then went with Mr. Dickinson [Mr. Dickinson is the person who made the tender] to the county clerk's office, and saw him, on the same day, pay to the deputy clerk, in charge of the office, the same sum, receiving his receipt therefor."

Now, unless paying money to the clerk is, under this statute, paying it into court, it is manifest that the payment made by the complainant in this case was wholly unauthorized, just as much so as if it had been made to the sheriff or any other officer

of the court. The clerk is not the court; he is simply its scribe and custodian of its records. He is not the agent of the court, nor has he any authority to act for or represent the court in its absence. In the discharge of its judicial duties, a court can have no agent or representative. The clerk of the circuit court does not possess the least shred of judicial power. He has no power to decide what is money, nor in what circulating medium payment in such a case must be made, whether in coin or currency. For anything that appears to the contrary, this payment was made to the clerk, not in the presence of the court, but in its absence and without its knowledge, and without any order or rule being entered on its minutes, or other record being made; and also without notice to the defendants, in their absence and without their knowledge. The money in such cases represents the land taken—it is the thing which the law substitutes for the land, and the thing which must be put into court is that thing which the law has legalized as money. It would seem, therefore, to be entirely clear, that the object of the legislature in directing that the money should be paid into the circuit court, was to give that court complete jurisdiction over the whole matter, namely, to see that the proper sum in legal money was paid to a person authorized by the court to receive it, also to make provision that the money should be safely and securely kept until a final disposition of it is to be made, and that when it is ordered to be paid, to see to it that the order directs that payment shall be made to the person who was entitled to the land taken. It is the payment of the money into court that confers upon the condemning company the right of appropriation, and as the money represents the land over which the right of appropriation is acquired, the court must, in making a final disposition of the money, treat it as if it were land, and order it to be paid to the person who was entitled to the land. *Ross* v. *Adams, 4 Dutch. 160; S. C. on error, 1 Vr. 505.* This interpretation of the statutory provision under consideration makes it plain, as I think, that a railroad corporation, incorporated under the General Railroad law, can, in no case where payment into court must precede appropriation, acquire a right to take

possession of the land condemned until it has paid the con-
demnation money into court, in such manner that the court
acquires, the instant that the payment is made, complete control
over the money for all purposes. In my judgment, to accom-
plish the legislative design, the money must be paid in the
presence of the court or under its authority, the indispensable
requisite being, that when the money passes from the hands of a
condemning company, it shall go into the hands of some person
whom the court has authorized to receive it, either by special
order or general regulation. The power of the court to desig-
nate the person to receive the money and to prescribe how it
shall be safely kept is, in my judgment, unquestionable and
absolute, and may be so exercised as that the clerk shall neither
handle nor touch the money.

It has long been settled, that when the defendant in a suit at
law desires to pay the sum which he admits to be due, into
court, in discharge of his liability to the plaintiff, he can only
do so under an order or a rule of the court in which the suit is
pending, and that a payment to the clerk, in such a case, in the
absence of an order or a rule, is not a payment into court. The
usual statement of this doctrine is, that the clerk has no author-
ity to receive money for the court without a rule. The supreme
court of this state has recently enforced this doctrine. *Levan* v.
*Sternfield, 26 Vr. 41.* Among the cases cited with approval, by
Mr. Justice Reed in delivering the opinion of the court in the
case just mentioned, is *Baker* v. *Hunt, 1 Ward. Leg. 103.* In
that case, it appeared that the defendant had paid to the clerk a
sum sufficient to satisfy the plaintiff's demand. The clerk re-
ceived the money, but refused to give receipt for it, stating that
he did not think he had any authority to receive it. He subse-
quently returned the money to the defendant, and then the
plaintiff applied for an order requiring the clerk to pay the
money to him. The application was denied, the court, by Chief-
Justice Savage, declaring: "The clerk had no right to receive
the money without a rule of court, and acted correctly in return-
ing the money to the defendant." Money paid to the clerk
cannot be considered as having been paid into court, for the very

obvious reason that the clerk is not the court and has no authority, in the absence of a statutory direction, or a special order, or a general regulation, to act for the court in such a case; and also for the further reason, that such a payment, especially when made without the authority of the court in its absence and without its knowledge, entirely fails to accomplish the fundamental object of the direction to pay the money into court, which is to put the money into the custody of the court for safe keeping and its ultimate payment, by order of the court, to the person entitled to it. In the absence of statutory direction, or a special order, or a general regulation, the clerk, in my judgment, has no more authority to receive money in such a case for the court than he has to decide what sum shall be paid, or what shall be received as money, or where the money shall be placed for safe keeping, or to whom it shall be paid.

As a general rule, money cannot be paid into the English court of chancery without an order. Mr. Daniell, in his treatise on *Pleading and Practice*, says: "No money can be paid into court to the credit of any cause or matter, with few exceptions, without an order." *2 Dan. Ch. Pr. (5th ed.) 1786 marg. 1708 bottom.* The exceptions referred to will be found, on examination, to be cases where parliament has selected the person to whom the money must be paid and has given express direction that it shall be paid to him. For example: the English statute, authorizing land to be taken for railroad and other purposes, generally called the Lands' Clauses act (*8 and 9 Vict. c. 18; 17 British Stat. p. 584*), declares, that when the sum awarded for land taken exceeds £200, and cannot, for any reason, be paid to the owner, the money shall be paid into the bank, in the name and with the privity of the accountant-general of the court of chancery, to be placed to the account there of such accountant-general. Under such a statute, it is obvious, that, to get the money into court, no order is necessary, nor has the court any authority to make one, for parliament has itself designated the person to whom the money shall be paid, and also where it shall be placed for safe keeping, and has thus deprived the court of all power either to appoint a person to receive the money or to

select a place for its safe keeping.  The construction of such statutes has been free from doubt or question from the time the first one was passed.  In an anonymous case, reported in *1 Ves. 56,* it appeared, that parliament, by a private act, had directed the sale of an estate and that the money arising from the sale should be paid into the bank, in the name and with the privity of the accountant-general.  After the sale, a petition was presented, asking that an order be made directing that the money be paid into court pursuant to the act.  Lord Thurlow held that he had no authority to make an order.  He said : " Money is frequently to be paid in by authority of the court; frequently the court has a right to look into it.  Here it is to be paid to the accountant-general, and the court has no authority."  And he then added, in substance, that when an act of parliament confers authority on the court, or refers a matter to the court, the court must obey the direction of parliament.  But one deduction can be fairly made from this statement of law, and that is, that when a statute directs that money shall be paid into a particular court, without designating a person to receive and where the money shall be placed for safe keeping, the duty of making such designations is necessarily imposed on the court, and the court must then look into the matter and decide who shall be authorized to receive the money and where it shall be placed for safe keeping.

In such a case, the money cannot get into court except by the authority of the court, for, until authority is given to some person, either by special order or general regulation, no one has authority to receive the money for the court.  When a statute does not order to whom it shall be paid, in order to put it into the custody of the court, the court must, and until the court does, either by special order or general regulation, no person, whether an officer of the court or not, has the least authority to receive the money for the court.

There are statutes which direct that money, in condemnation cases, shall be paid into court, by paying it to a particular officer ; as, for example, as that it shall be paid to the clerk of the circuit court, or that it shall be paid into a specified court, to

the clerk thereof; and others still, which, without ordering the money paid into court, simply direct that it shall be paid to the county clerk. But between such statutes, and a statute which directs that the money shall be paid into a particular court, without directing to whom the payment shall be made, there is, it will be observed, a clear and broad distinction. They vary both in their words and their substance. Statutes, expressed in the form first stated, point out, plainly and distinctly, an officer to whom the money shall be paid, and must therefore be understood, as a legislative command, that the payment must be made to him. The court, under such a statute, has no power whatever to direct or control the payment of the money, because the legislature has given full and final direction on that subject. While a statute expressed in the second form, as it omits the direction given by the first, and fails to say to whom the money shall be paid, and simply says that it shall be paid into court, without more, must be understood, according to an established principle of construction, as evincing a clear legislative purpose, especially when the words of the two are contrasted, to give the court, into which the money is directed to be paid, full power and authority to decide how it shall be brought into court, who shall be authorized to receive it and where it shall be placed for safe keeping. The two provisions it will be noticed, differ widely in a highly-important particular. The one directs to whom the money shall be paid in order to bring it into court, while the other simply directs that the money shall be paid into court without appointing any person to receive it. The one gives full and specific direction as to whom the money shall be paid and the other says nothing whatever on that subject. The one omits a material direction that the other contains. They cannot, therefore, mean the same thing. To declare that they do, would not be construction, but legislation. A court may expound, but it cannot legislate. The principle which must control the construction of a statute, differing as widely as this does from other statutes on the same subject, was laid down by Mr. Justice Buller, many years ago, in *Jones* v. *Smart, 1 T. R. 44,* and recognized and enforced by the court of errors and appeals, speaking by Chief-

Justice Beasley, in *Palmateer* v. *Tilton, 13 Stew. Eq. 555, 557.*
It is this: " We are bound to take the act of parliament as they
have made it; a *casus omissus* can in no case be supplied by a
court of law, for that would be to make laws."

Without giving any consideration to the question as to whether,
where payment of the condemnation money into court must pre-
cede appropriation, a right to possession can, in any case, be
legally acquired, except the payment is made on notice to the
landowner, so that he is afforded an opportunity to be present
in court to see that his rights are properly protected, my judg-
ment is that the complainant's application must be denied, for
the reason that, on its own showing, it appears that it has not
paid the condemnation money in such manner as to give it a
right to take possession of the land condemned.

There is another reason why I think the complainant's appli-
cation, in its present form, must be denied. The land of the
defendants which the complainant seeks to acquire, as described
in the condemnation proceedings, consists of a strip fifty-five
feet in width, extending from the northerly boundary of a street
in Jersey City, known as Railroad avenue, northward a little
less than five hundred and twenty-five feet. The defendants, as
abutting owners, hold the fee of one-half of the land occupied
by this street. At the point where the complainant's railroad
will cross this street, the street is about fifty feet wide, so that
the complainant's route, at the point of crossing, embraces a lot
of land belonging to the defendants, but constituting a part of
the street, fifty-five feet in width by twenty-five feet in length,
and containing about thirteen hundred and seventy-five square
feet. This land in the street forms no part of the land which
the complainant notified the defendants it intended to take, and
of which the statute required the complainant to give " a par-
ticular description " in writing. *Rev. p. 928 § 100.* It lies, in
fact, entirely outside of the land described in the condemnation
proceedings. Hence, unless the quantity of land acquired by
the exercise of the power of eminent domain in this case can be
extended, by construction, so as to embrace land lying outside
of the boundaries of the land described, it is manifest that the

complainant has acquired no right whatever to use or possess the defendants' land in the street. At the time the condemnation proceedings were commenced, the defendants' land in the street was burdened with the easement of a public highway. Subsequently, however, and between the date when the commissioners made their award and the date when the appeals from their award were tried, the street, at the point of crossing within the lines of the complainant's route, was vacated by the proper authority, so that the fact is that, when the sum which must be regarded as just compensation for the land taken was finally determined by the verdict of the jury which tried the appeals, the defendants' land in the street was no longer subject to the easement of a public highway, but had been entirely freed from it. It is not pretended by the complainant that the sum awarded by the jury included the value of the defendants' land in the street, or that on the trial of the question as to what sum would constitute just compensation for the land which the complainant wanted to acquire, either party understood or supposed that the land in the street constituted part of the land for which compensation should be made. No evidence respecting its value, or the damages which would be caused by its appropriation, was offered by either party. They, on the contrary, restricted their evidence, as to value and damages, to the land embraced within the particular description which the complainant had given of the land it intended to take.

Notwithstanding these facts, the complainant contends that it has acquired a right to construct its railroad over the defendants' land in the street. The general principle asserted in support of this contention is that the condemnation of land abutting upon a highway, by a railroad corporation, operates as a grant of land outside of the land particularly described, and carries the right acquired by the condemning company as far into the public way as the title of the owner, whose land is taken, extends. The argument is, of course, that such is the legal effect imputed, by construction, to a grant of land abutting upon a public way, made by deed, and that, as land taken by the exercise of the power of eminent domain, is held, in legal theory

at least, to have been acquired by grant, the meaning and effect of such a grant should be determined by the same rules which govern the construction of a grant made by deed. But this argument, as is apparent, entirely overlooks the wide difference existing between the two grants, both as to the means by which they are effected and the purposes for which they are made. When land abutting on a public way is conveyed by deed, free from condition or limitation, the grantee acquires a right, by the deed, to use the land for any and all purposes for which land may lawfully be used. To many of such purposes the land occupied by the highway, whether it remains subject to an easement in favor of the public or not, is a necessary and indispensable adjunct. When a conveyance of land thus situated is presented for construction, the presumption is easy and natural that the parties to the deed both understood and expected that the land in the highway, though not within its descriptive words, would pass by the deed. The land in the street in such a case " being regarded," as Chief-Justice Beasley, in the leading case on this subject in this state, said, " as a mere adjunct of the property sold and worthless for any other use." *Salter* v. *Jonas, 10 Vr. 469, 472.* And it is upon the ground of the presumed intention of the parties, and upon this ground alone, that the doctrine rests that the delineatory words of a deed may be extended by construction so as to make the deed convey more land than they describe. In the case just cited, the chief-justice (at *p. 473*) says: " The particular words should, in such transactions, be controlled and limited by the manifest intention which is unmistakably displayed in the nature of the affair and the situation of the parties. When the conditions of the case are altered, as if the vendor should, in a given case, have an apparent interest to reserve to himself the parcel of street in question, a different rule of interpretation might become proper."

It would seem then to be beyond dispute, that the construction which the complainant contends should be given to its grant, cannot be adopted, for the reason that the presumption upon which it can alone rest, cannot be made in any case where land is taken *in invitum.* In such a case, the fact is, and no sensible

presumption can be made to the contrary, that the landowner means to grant nothing; he simply submits to legal compulsion and does not intend to give up anything which the law will permit him to keep. That such was not only the purpose, but stubborn determination of the landowners in this case, is made entirely certain by the averments of the complainant's bill. The defendants are charged with having pertinaciously resisted the complainant, in its efforts to acquire a right to cross their land, by the institution of many distinct legal proceedings, in both the state and federal courts, in bad faith and solely to delay and obstruct the complainant in the pursuit of its rights. Their course, in this respect, as described by the complainant, shows that they did not intend to yield anything which the law would permit them to keep, nor even to submit to legal compulsion if they could help it. The law never indulges in presumptions contrary to what the fact appears to be.

Besides, I think it is debatable whether, where land, abutting upon a highway, is conveyed by deed to a railroad corporation, simply as a part of its right of way, and for no other purpose, the land in the highway, belonging to the grantor, would, by force of the rule under consideration, be held to pass. The land conveyed, in such case, would be acquired, not for all the uses to which land may lawfully be applied, but for a single purpose, namely, for the passage of railroad cars over it. The land in the highway could not be used as an adjunct to such a purpose, nor could it be applied, in any other lawful way, so as to render it valuable or useful to the grantee as a railroad corporation. None of the reasons which govern the construction of a deed, whereby land is conveyed to the grantee for all purposes, would exist in such a case, and it would, therefore, seem to be the duty of the court, when such a deed is presented for construction, to declare, that when the reason of any particular law ceases, so does the law itself.

But there is another, and as I think, conclusive reason, why land taken by the exercise of the power of eminent domain, under the General Railroad law, must be held to be unalterably limited to the land particularly described, and that its area can

in no case and under no circumstances be extended or enlarged by construction. The legislative purpose, in requiring the condemning company to give a particular description in writing of the land it intends to take, is apparent, and had its origin, unquestionably, in a desire to secure fairness and promote justice. The duty of furnishing a particular description was manifestly imposed, so that the landowner might see and know just how much of his land was required, and what was its position and relation to his other land, and thus be placed in a position where he would have a fair opportunity to contest with his adversary the question of just compensation; and also, that all persons, who should be charged with the duty of ascertaining and determining what would be just compensation for the land taken, might be furnished with the means of estimating, intelligently and judiciously, the value of the land to be taken and the damages which would be caused thereby. That this purpose would be defeated, and the wrong which the legislature meant to prevent would be done, if the complainant's construction of its grant were adopted, appears to me to be so plain that no argument is required to prove it. On general principles of justice, I think it is entirely clear, that a grant acquired by a railroad corporation by the exercise of the power of eminent domain should not be enlarged or extended by inference or implication. With respect to such grants, the rule of construction should be held to be, that whatever is not granted by express words must be understood to have been withheld.

For these reasons, I think the court is bound to declare, that the complainant acquired no right, by the condemnation proceedings, to the defendants' land in Railroad avenue. This being so, it follows necessarily, that until the complainant may lawfully use that land, in passing to and from the point where it intends, according to the plan set forth in its bill, to commence the construction of its crossing, no injunction, of the kind asked for, should issue. If it were issued, it would inflict serious injury on the defendants and do the complainant no good. The first and principal measure of relief asked is, that the defendants may be compelled to remove the cars standing over the cross-

ing, on tracks 1, 2 and 3, and keep those tracks, at that point, free, in order that the complainant may commence work in con-structing its crossing by excavating under those tracks. But the fact is, that in consequence of the situation and surroundings of the land condemned for the crossing, the complainant has no means of access to the point where its excavation, under its present plan of constructing its crossing, must commence, except over and across the defendants' land in the street. And as the complainant has not, as yet, acquired a right to use that land, it follows that it cannot proceed to excavate under the three tracks, and consequently has no right to have the cars standing over the crossing removed.

My conclusions on the whole case are—*first*, that as the com-plainant had not paid the condemnation money into court when it filed its bill, and hence has acquired no right to the possession of the land condemned, its bill must be dismissed, but without prejudice to the commencement of a new suit ; and *second*, that as the defendants' cross-bill shows that the complainant has taken possession of the defendants' land in Railroad avenue, and commenced work thereon, without right, an injunction must issue restraining the complainant from its further use.